BROWNE & MANZANARES COMPANY
v.
EDWARD P. SAMPSON ET AL.

*Mortgages—Foreclosure—Husband and Wife.*

1.  When there is any uncertainty as to the meaning of an instrument, a court will hear evidence of the circumstances surrounding and attending its execution.

2.  Upon a bill filed against a husband and wife to foreclose a mortgage given by them upon property of the wife to secure advances and sales to be made to them, the evidence showing that such advances and sales were made to the husband alone, this court declines, in view of such facts, there being no evidence that the wife ever had any interest in the business of the husband, to interfere with the decree for the defendants.

[Opinion filed May 2, 1892.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. SMITH & HARLAN, for appellant.

Mr. F. W. COOMBS, for appellees.

WATERMAN, P. J.   On October 31, 1885, appellees, Teresa and Edward P. Sampson, her husband, executed and delivered to appellant, a corporation of New Mexico, a mortgage of certain lots in Cook County, Ill., the property of the wife, and given, as was recited therein, to secure " advances and sales of goods, wares and merchandise to them, not to exceed, with interest, the value of $2,500, said advances and sales to be limited to a period of one year from the date of the mortgage, and to be paid for in full at the end of said period."

At the time this mortgage was given, appellees were living in and keeping a hotel at Las Vegas, New Mexico, each

taking part in the care and management of the house, the business of which was conducted in the name of Mr. Sampson, upon whose credit supplies had been obtained, and who looked after the outside and financial part of the work; Mrs. Sampson's interest was only such as a wife ordinarily has in the business of her husband who is keeping and living in a hotel.

Up to about September, 1885, a Mr. Blanchard had guaranteed the account of Mr. Sampson with appellant. This ceasing, Mr. Sampson offered to give security upon the property of his wife in Illinois, for a further line of credit.

Mrs. Sampson seems to have agreed to sign the mortgage upon the understanding that she was to come into the management of the hotel as an equal partner with her husband. As she says, she did not wish to sign unless she had a voice in the disposition of whatever might be obtained on the security she was giving; and she understood this was to be the case; but it does not appear that any definite agreement for a partnership was entered into between Mr. and Mrs. Sampson, or that there was any material change in the carrying on business or control of the hotel. Mrs. Sampson, according to the testimony of some witnesses, was really "the man of the house," looked after the bills, took and used money as she saw fit, and seemed to be running the house. Mr. and Mrs. Sampson testify that she had no interest in the business. The accounts of appellant were, after the making of the mortgage as before, kept with Mr. Sampson, charges and credits being made to him alone.

Appellees were to have an examination made concerning the value of the property mortgaged, which Mr. Sampson represented was worth $2,500. Relying upon this representation appellant let him have goods and advances in November, so that at the end of that month there was due from him to appellant over $1,700. Ascertaining that the property mortgaged by Mr. and Mrs. Sampson was not then worth to exceed $1,000, appellant declined to make any further advances or sales, and in August, 1889, filed its bill to foreclose, claiming that the credit of $1,700, extended

in November, was covered by the mortgage. Upon the hearing, the court found for appellees and rendered a decree dismissing the bill.

Appellant insists that the expression in the mortgage to secure "advances and sales to them," is to be construed as meaning to secure advances and sales to either of the mortgagors, for the benefit of the hotel, in which, it is insisted, both were interested, and toward the running of which it was contemplated at the making of the mortgage the advances and sales would be made.

It is undoubtedly the case that when there is any uncertainty as to the meaning of an instrument, the court will hear evidence of the circumstances surrounding and attending its execution, in other words will place itself in the shoes of the parties, and by the light thus obtained will construe its uncertain expressions in accordance with the intent of the parties.

Under this rule it was proper for the court to consider, as it did, the circumstances under which this mortgage was made and what was thereafter done by the parties thereto; the difficulty with the position of appellant is, that the chancellor, in whose presence the witnesses for the defendants testified, found for the appellees; that is, found that the intention of the parties was to give security only for advances and sales made to both of the mortgagors; and also found that the advances and sales were to Mr. Sampson and for his benefit only; such, it must be presumed, was the finding of the court under which the bill was dismissed. A portion of the testimony having been given in open court, the considerations that exist in reference to the verdict of a jury apply to the finding; and we are not able from our examination of the record to say that the conclusions of the chancellor are not sustained by the evidence.

It is easy to be seen that appellant may have looked upon the mortgage as security for whatever might thenceforth be supplied to the hotel, and may have given the credit extended in November upon such understanding; but the question is, what does the mortgage itself declare as to

this matter? It provides not that advances and sales shall be made to the Plaza Hotel, or to Mr. Sampson, but "to them," that is, to Mr. and Mrs. Sampson, unless it can be made to appear that the words "to them" were used in a less restrictive sense; that they were used in any other than in their usual plural and joint signification was not, in the view of the chancellor, made to appear.

There were many things tending to induce appellant to believe that Mrs. Sampson was in partnership with her husband in the carrying on of this hotel; but all that was done by her was no more than many wives do who have no interest other than such as every true wife feels in the success of her husband's business ventures. There is no direct evidence that she ever had a partnership or business interest, while there is positive testimony that she had not. Appellant might perhaps have charged all goods sold and advances made, after the execution of the mortgage, to both Mr. and Mrs. Sampson; instead of this Mr. Sampson alone continued upon its books to be recognized as their debtor; and while Mrs. Sampson might have insisted upon actually becoming a partner, it does not appear that she did.

In view of the fact that the credit was at least nominally given to Mr. Sampson alone, and that there is no direct evidence that Mrs. Sampson ever had an interest in the business, we do not think that the conclusions of the chancellor can be set aside, and the decree of the Circuit Court must therefore be affirmed.

*Decree affirmed.*